IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

ROBERT V. GOMEZ, II, KAITLYN  \*
ANN WILLE, and JENNIFER PRICE,
                                \*
    Plaintiffs,
                                \*
vs.
                                \*     CASE NO. 3:17-CV-41 (CDL)
HARBOR FREIGHT TOOLS USA, INC.,
CENTRAL PURCHASING, LLC, and    \*
HFT HOLDINGS, INC.,
                                \*
    Defendants.
                                \*

## O R D E R

Plaintiffs Robert V. Gomez, II, Kaitlyn Ann Wille, and Jennifer Price assert that they were injured when Gomez poured fuel from a Blitz portable gasoline container onto a mostly extinguished fire and the container exploded. Plaintiffs contend that the gas container was defective because it did not have a flame arrestor. The gas container was manufactured by Blitz U.S.A., which declared bankruptcy in 2011. Plaintiffs brought this action against Defendants Harbor Freight Tools USA, Inc., Central Purchasing, LLC, and HFT Holdings, Inc. (collectively, "Harbor Freight") because they assert that the gas container was purchased from a Harbor Freight store. Harbor Freight seeks summary judgment, arguing that this assertion is implausible because Plaintiffs cannot point to any evidence, either in Harbor Freight's records or testimony from Harbor Freight employees, that

Harbor Freight ever sold Blitz gas containers. But Plaintiffs did point to the testimony of Gomez's mother, Ronda Baldree, who testified unequivocally that she bought the gas container at the Harbor Freight store in Valdosta, Georgia and loaned it to her son on the day of the explosion. As discussed in more detail below, this evidence creates a genuine fact dispute on whether the gas container was purchased from a Harbor Freight store. The Court denies Harbor Freight's summary judgment motion (ECF No. 45) on this ground. The Court also denies Harbor Freight's summary judgment motion on Gomez's implied warranty claim but grants Harbor Freight's motion as to Plaintiffs' post-sale failure to warn claims and the implied warranty claims of Wille and Price.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if

the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following facts. In 2012, Ronda Baldree worked for Mackey Lumber in Valdosta, Georgia. Baldree Dep. 23:1-5, 24:17-19, ECF No. 50-1. Mackey Lumber is next door to a Harbor Freight store. *Id.* at 76:2-7. One afternoon in September 2012, Baldree asked a colleague if there were any gas containers in stock at Mackey Lumber, but there were none. *Id.* at 78:19-24. The colleague said that Harbor Freight probably carried them, so Baldree took a break from her work and walked next door to Harbor Freight, where she found a "whole friggin' wall" of gas containers. *Id.* at 78:3-8. She picked one up, paid for it, and went back to work. *Id.* at 78:9-10. She did not keep the receipt.

Baldree lives next door to her son, Plaintiff Bobby Gomez. On March 6, 2015, Gomez asked Baldree if he could use her gas container because he was having a get-together and "wanted to get some diesel because the firewood was soaked and it was wet." *Id.* at 58:1-5, 21-23. Baldree said yes, so Gomez went to her garage, got the gas container, and used it. *Id.* The gas container Gomez borrowed was the one Baldree bought from Harbor Freight. *Id.* at 75:22-76:4.

3

Harbor Freight disputes that the gas container involved in the March 2015 incident was purchased at one of its stores. In support of this argument, Harbor Freight presented testimony from its employees that Harbor Freight did not sell Blitz plastic gas containers, as well as sales records for the Valdosta store that do not list any sales of Blitz brand gas containers between 2012 and 2015. Harbor Freight also points out that Plaintiffs abandoned their original theory on how the gas container came to be sold at Harbor Freight and have not proffered a new theory. Plaintiffs initially alleged that Scepter Holdings, Inc., Scepter Canada, Inc., Scepter Manufacturing, LLC, ("Scepter") and The Moore Company ("Moore") distributed the gas container to Harbor Freight. After discovery closed and Scepter and Moore filed summary judgment motions, Plaintiffs voluntarily dismissed their claims against them with prejudice. Plaintiffs now acknowledge that the gas container was not sourced through Scepter or Moore, and they admit that "[t]he question of exactly how Harbor Freight came to have Blitz gas cans in stock and on the shelves of its store remains to be answered." Pls.' Resp. to Defs.' Mot. for Summ. J. 11, ECF No. 50. They argue that "[i]t is entirely plausible that the [gas container] was sold to some other distributor" and got to Harbor Freight through that distributor, but they have not discovered any evidence to trace the source of the gas container through another distributor. *Id.* at 14.

4

DISCUSSION

Plaintiffs brought claims against Harbor Freight for negligence, pre-sale failure to warn, post-sale failure to warn, and breach of implied warranty. Harbor Freight seeks summary judgment on all claims because it contends that Plaintiffs cannot establish that the gas container was purchased from a Harbor Freight store. In the alternative, Harbor Freight seeks summary judgment on the warranty claims due to lack of privity and the post-sale failure to warn claim because Georgia law does not impose such a duty on product sellers.

**I. Is There a Genuine Fact Dispute on Where the Gas Container was Purchased?**

A. <u>Can Plaintiffs Rely on Baldree's Testimony?</u>

Harbor Freight argues that the Court cannot rely on Baldree's testimony to establish that the gas container was purchased at Harbor Freight. First, Harbor Freight asserts that a plaintiff may not rely on "self-serving testimony" to oppose summary judgment. Harbor Freight is wrong. In this circuit, "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *id.* at 858-59 ("A non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated."). Baldree's testimony is based on her

personal knowledge, so the fact that it is self-serving does not mean that the Court must disregard it.

Second, Harbor Freight discounts Baldree's testimony as "merely colorable" and "conclusory." Defs.' Br. in Supp. of Mot. for Summ. J. 9, ECF No. 45-1 (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 (11th Cir. 1988) and *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989)). It is not. In *Brown*, the question was whether the plaintiff had submitted sufficient evidence to show that a city's official decisionmakers sanctioned the use of deadly force under constitutionally unreasonable circumstances and thereby repudiated the city's official policy manual on deadly force. *Brown*, 848 F.2d at 1540. The Eleventh Circuit doubted that the plaintiff had presented *any* evidence to establish that the city's policy was not, in fact, the policy but stated that even if he had, it was "merely colorable" because it was nothing more than a scintilla of evidence that was not significantly probative on this point and thus could not defeat summary judgment. *Id.* at 1540 & n.12. In *Peppers*, the Eleventh Circuit emphasized that a party cannot survive summary judgment if his "response consists of nothing more than a repetition of his conclusory allegations." *Peppers*, 887 F.2d at 1498. Here, unlike in *Brown* and *Peppers*, Baldree's testimony about specific facts within her personal knowledge is probative evidence that is not

"merely colorable" and is not a repetition of unsupported conclusory allegations.

Third, Harbor Freight objects to Baldree's testimony as implausible. In support of this argument, Harbor Freight quotes *Mize v. Jefferson City Board of Education*, 93 F.3d 739 (11th Cir. 1996), as quoted in *Cuesta v. School Board of Miami-Dade County*, 285 F.3d 962 (11th Cir. 2002), for the proposition that a court cannot permit a case to go to a jury "when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize*, 93 F.3d at 743 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592–94 (1986)). In *Mize*, the Eleventh Circuit noted that "there is a difference between direct evidence and inferences that may permissibly be drawn from that evidence." *Id.* at 742. "Where a non-movant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." *Id.* If "the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests." *Id.* at 743. Here, Baldree's testimony is direct evidence that she purchased the gas container at Harbor Freight and that it was the gas container Gomez used on the night of the incident. *See Simien v. S.S. Kresge Co.*, 566 F.2d 551, 555–56 (5th Cir. 1978)

7

(suggesting that a buyer's testimony regarding where she purchased a product was sufficient to create a jury question on that issue).[1] It is not up to the Court at this stage to determine whether Baldree's testimony is credible. That is the jury's job at trial. In summary, Plaintiffs may rely on Baldree's testimony to oppose summary judgment.

B. Does Baldree's Testimony Create a Genuine Fact Dispute?

Harbor Freight argues that even if a reasonable juror could conclude from Baldree's testimony that the gas container was purchased at a Harbor Freight store, Plaintiffs still cannot survive summary judgment. First, Harbor Freight asserts that Plaintiffs are improperly attempting to amend their complaint through their summary judgment briefing and assert a new claim because they have abandoned the theory advanced in their Complaint that Harbor Freight sourced the gas container through Scepter and Moore. But Plaintiffs are not raising a new claim. Plaintiffs

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Defendants assert that the *Simien* court found that the buyer's testimony was insufficient to create a jury question on whether the retailer sold an allegedly defective jacket. It did not. The *Simien* court found that the trial judge committed reversible error when he refused to submit an interrogatory to the jury asking whether the allegedly defective jacket had been purchased from the defendant. *Simien*, 566 F.2d at 556. The fact dispute existed because the buyer of the jacket testified that she bought the jacket from the defendant, but the defendant's employees testified she could not have done so because the jacket was not from one of its suppliers. But the *Simien* court also found that the trial judge should have granted the retailer's motion for judgment notwithstanding the verdict because there was no substantial evidence of a defect in the jacket.

have always claimed that the gas container was purchased at the Valdosta Harbor Freight store. Compl. ¶ 37, ECF No. 1. They have always claimed that Harbor Freight sold the gas container despite significant publicly available information establishing that it was defective. *Id.* ¶¶ 38-40. So, although Plaintiffs cannot establish *how* the gas container came to be in a large display of gas containers at the Valdosta Harbor Freight, they do have direct evidence to support their assertion that it was there, that Baldree purchased it, and that Gomez used it on March 6, 2015.

Second, Harbor Freight argues that it is entitled to summary judgment because Plaintiffs did not present any evidence that it knowingly sold the Blitz gas container and thus cannot establish that Harbor Freight sold the Blitz gas container despite knowing that it was defective. Harbor Freight is correct that under Georgia law, product sellers cannot be held liable under a strict liability theory. *See* O.C.G.A. § 51-1-11.1(c). And, a product seller can be "liable for negligent failure to warn only if, at the time of the sale, it had 'actual or constructive knowledge' that its product created a danger for the consumer." *Bishop v. Farhat*, 489 S.E.2d 323, 328 (Ga. Ct. App. 1997) (quoting *Stiltjes v. Ridco Exterminating Co.*, 386 S.E.2d 696, 698 (Ga. Ct. App. 1989)). "The seller is required to warn if [it] 'has knowledge, or by the application of reasonable, developed human skill and

9

foresight should have knowledge of the danger. . . .'" *Id.* (quoting *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994)).

Harbor Freight suggests that if Plaintiffs cannot connect the dots on the supply chain, then it is implausible to believe that Harbor Freight knowingly sold the gas container, much less sold it despite knowing that it had a defect. Harbor Freight's theory seems to be that to reconcile Baldree's testimony with Harbor Freight's evidence, the jury would also have to believe that someone snuck into the Valdosta Harbor Freight store and placed the gas container in a display without Harbor Frieght's knowledge and that it was somehow rung up and sold to Baldree in a way that evaded Harbor Freight's sales records. But if a jury believes Baldree that she bought the gas container at Harbor Freight, then the jury may discount Harbor Freight's conflicting evidence without imagining ways for all of the evidence to harmonize.[2] Summary judgment is not appropriate.

To the extent that Harbor Freight is arguing that it did not know of a defect in Blitz gas containers in September 2012, this argument is premature. Harbor Freight and the other Defendants insisted on phased discovery, and the Court issued a scheduling order limiting Phase I discovery "to issues related to whether the

---

[2] The Court emphasizes that it makes no judgment on what a jury may find. A jury may conclude that in light of Harbor Freight's evidence, Baldree must be mistaken (or lying) about where she bought the gas container or whether the gas container she bought at Harbor Freight was the one Gomez borrowed. But this fact question is for the jury, not the Court.

10

Blitz can at issue was distributed or sold by any/all of the defendants." Scheduling & Disc. Order ¶ 1, ECF No. 33. The question whether the gas container was defective and the question whether Harbor Freight knew of that danger were not within the scope of Phase I discovery. The Court therefore denies summary judgment on this issue at this time.

**II. Plaintiffs' Warranty Claim**

Plaintiffs also assert a breach of implied warranty claim against Harbor Freight. Harbor Freight seeks summary judgment on this claim based on lack of privity. Plaintiffs contend that it would be premature to rule on this motion as outside the scope of Phase I of this litigation. Phase I discovery covered the issue of whether the Blitz gas container was sold by one of the Defendants, and that issue necessarily included whether the gas container was sold *to* one of the Plaintiffs. It is undisputed that none of the Plaintiffs purchased the gas container. Rather, the evidence viewed in the light most favorable to Plaintiffs establishes that Baldree purchased the gas container from the Valdosta Harbor Freight. And, the evidence establishes that Gomez used the gas container on his property, not on Baldree's. Plaintiffs do not assert that additional discovery is needed to decide this issue.

"Georgia law establishes that in order to recover under a theory of breach of implied warranty of merchantability, a

plaintiff must have privity with the seller." *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 560-61 (Ga. 1996). "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty." O.C.G.A. § 11-2-318.

Plaintiffs do not dispute that Harbor Freight is entitled to summary judgment on the warranty claims of Price and Wille. It is undisputed that Price and Wille were not members of Baldree's family or household and were not guests in her home when the gas container exploded next door in Gomez's yard. Therefore, Harbor Freight is entitled to summary judgment on their warranty claims.

Plaintiffs do contend that Harbor Freight is not entitled to summary judgment on Gomez's warranty claims because he is a member of Baldree's family and it was reasonable to expect that he may use the gas container. The Georgia Court of Appeals has held that "the words 'family or household'" in O.C.G.A. § 11-2-318 "do not, because stated in the alternative, limit members of the family who may rely on the implied warranty to those who live within the household of the buyer." *Chastain v. Fuqua Indus., Inc.*, 275 S.E.2d 679, 683 (Ga. Ct. App. 1980). In *Chastain*, the Georgia Court of Appeals concluded that in light of the "remedial nature of the provision and the natural connotations of the word . . . the word

'family' as used in the statute includes the nephew of the purchaser, who lived next door and not in the owner's 'house.'" *Id.* at 684. In *Chastain*, the product at issue was a riding lawnmower, and the Georgia Court of Appeals found that because there was evidence that the nephew was expected to use the lawnmower to cut the buyer's grass, there was a jury question on whether he was a member of the buyer's family "and as such entitled to the benefit of the warranties." *Id.* In this case, Gomez is Baldree's son and is thus a member of her family. The Court cannot conclude based on the present record that it was unreasonable as a matter of law to expect that Gomez may use the gas container his mother purchased and stored in her garage next door to Gomez's house. Harbor Freight's present summary judgment motion on Gomez's breach of warranty claim is therefore denied.

**III. Plaintiffs' Post-Sale Failure to Warn Claim**

Plaintiffs did not respond to Harbor Freight's motion for summary judgment as to the *post-sale* failure to warn claim, and they did not argue that additional discovery is necessary to decide it. This is a pure issue of law, and the Court sees no reason to delay a decision on it.

"Georgia law recognizes a *manufacturer's* duty to warn consumers of danger arising from the use of a product based on knowledge acquired after the product is sold." *DeLoach v. Rovema Corp.*, 527 S.E.2d 882, 883 (Ga. Ct. App. 2000) (emphasis added).

"But Georgia law imposes a duty on a *seller* to warn only of dangers actually or constructively known *at the time of the sale*." *Id.* (emphasis added); *accord Bishop*, 489 S.E.2d at 328 (emphasizing that a distributor's liability for negligent failure to warn is based on what the distributor knew or should have known "at the time of the sale"). Plaintiffs only assert that Harbor Freight sold the container; they do not contend that Harbor Freight manufactured it. Thus, Harbor Freight cannot be liable for a post-sale failure to warn, and this claim fails as a matter of law.

CONCLUSION

For the reasons set forth above, Harbor Freight's summary judgment motion (ECF No. 45) is granted as to Plaintiffs' post-sale failure to warn claims and the implied warranty claims of Wille and Price. The motion is denied as to all other claims. Within fourteen days of today's Order, the parties shall confer and submit to the Court a proposed scheduling and discovery order for Phase II. In proposing the schedule and in planning Phase II, the parties should be aware that the Court is unlikely to grant a discovery extension, and there will be no Court or Clerk's office extensions to the briefing schedules.

IT IS SO ORDERED, this 16th day of July, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA