IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

ROBERT V. GOMEZ, II, KAITLYN      *
ANN WILLE, and JENNIFER PRICE,
                                  *
     Plaintiffs,
                                  *
vs.
                                  *      CASE NO. 3:17-CV-41 (CDL)
HARBOR FREIGHT TOOLS USA, INC.,
CENTRAL PURCHASING,LLC, and HFT   *
HOLDINGS, INC.,
                                  *
     Defendants.
                                  *

O R D E R

Robert V. Gomez, II, Kaitlyn Ann Wille, and Jennifer Price ("Plaintiffs") assert that they were injured when Gomez poured a mixture of diesel and gasoline from a Blitz portable gasoline can onto a mostly extinguished fire and the gas can exploded. Plaintiffs contend that the gas can was defective because it did not have a flame arrestor and did not contain adequate warnings. The gas can was manufactured by Blitz U.S.A., which declared bankruptcy in 2011. Plaintiffs brought this action against Defendants Harbor Freight Tools USA, Inc., Central Purchasing, LLC, and HFT Holdings, Inc. (collectively, "Harbor Freight") because they assert that the gas can was purchased from a Harbor Freight store. The Court previously concluded that a genuine fact dispute exists on whether the gas can was purchased from Harbor Freight. *See* Order (July 16, 2018), ECF No. 52. Harbor Freight

filed a second summary judgment motion, asserting that it is entitled to judgment as a matter of law on all of Plaintiffs' remaining claims.  As discussed below, Harbor Freight's summary judgment motion (ECF No. 76) is granted as to Plaintiffs' negligent failure to warn and implied warranty of merchantability claims but denied as to Plaintiffs' negligent sale claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following facts.

In September 2012, Ronda Baldree bought a five-gallon Blitz brand plastic gas can from the Harbor Freight store in Valdosta,

Georgia.[1]   Baldree Dep. 78:24-79:10, ECF No. 100.   Baldree used the gas can for storing gasoline and fueling her lawn mower.   *Id.* at 96:4-24; 101:14-23 (stating that Baldree's son Tommy Lee and her daughter Raven Bennett fueled Baldree's lawnmower using the gas can, which Baldree kept in her garage).

Baldree lives next door to one of her sons, Plaintiff Bobby Gomez.   On March 6, 2015, Gomez asked Baldree if he could use her gas can.   *Id.* at 58:1-5, 21-23. Baldree said yes, so Gomez went to her garage and borrowed the gas can Baldree had bought from Harbor Freight. *Id.* at 58:3-5; 75:22-76:4.   The gas can contained a "small amount . . . of gasoline, maybe a cup or less."   Gomez Dep. 24:9-11, ECF No. 79-1.   Gomez took the gas can to a filling station and put about a gallon of diesel in it.   *Id.* at 24:14-19.   He did not dump out the gas first.   Gomez "thought that the diesel would have just completely diluted the gas, and it was -- it would have been like the gas wasn't even in existence . . . [b]ecause it was such a great amount of diesel compared to the gas."   *Id.* at 75:10-16.

That evening, Gomez had an informal gathering in his backyard with some of his friends, including Wille and Price.   Gomez had a portable firepit, and he tried to start a fire by balling up some

---

[1] Harbor Freight argues that its records do not show that it sold Blitz gas cans in general or that it sold one to Baldree in September 2012. This is the same argument Harbor Freight made in its prior summary judgment motion, which the Court denied. The Court concluded that a genuine fact dispute exists on whether Harbor Freight sold Blitz gas cans because Baldree testified that she bought one from Harbor Freight. *See* Order (July 16, 2018).

paper, putting it between the logs, and lighting it.  *Id.* at 35:1-
2.  But the wood was wet, and Gomez "realized that it wasn't going
to catch."  I*d.* at 35:3-4.  He "kind of waited a little while for
it to go out and grabbed the [gas] can, released the nozzle, walked
over to the fire pit, and just kind of drizzled some diesel around
the outer edge of the firewood."  *Id.* at 35:4-7.  He balled up
some more paper and lit it.  It "slowly caught the diesel," then
"burned for a few minutes and went out."  *Id.* at 36:8-11.  Gomez
did not see any flames or embers, but "there may have been very
small pieces of paper burning or smoldering."  *Id.* at 64:4-10.
Gomez went to drizzle more fuel around the fire pit.  As soon as
he tipped the gas can, "there was an extremely loud hissing," and
the gas can exploded.  *Id.* at 37:1-4.

Gomez knew that it would be dangerous to use gasoline on a
fire because "[g]as is extremely flammable."  *Id.* at 40:9-17.
Gomez was aware that there are warnings on the sides of gas cans,
and he read and understood such warnings before March 6, 2015.
*Id.* at 22:1-10.  But Gomez testified that he did not know it would
be dangerous to use diesel on a fire.  When Gomez worked on his
family's property as a teenager, he would help push together a
pile of trash "and kind of douse it down with diesel and light
it. . . .  Never once did anything violent happen, no explosions."
*Id.* at 22:18-23:1.  He had also previously poured diesel on a small
flame, and the diesel put out the flame.  *Id.* at 23:2-13.  Gomez

assumed that because there was mostly diesel in the gas can on March 6, 2015, he would not get injured by pouring it into the fire pit.  He did not account for the fact that there was some gasoline in the gas can, and he was "under the impression that with that much diesel on top of [the gasoline], that it would have killed the dangerous properties of the gasoline."  *Id.* at 42:4-6; 52:17-19.

The gas can had a number of warnings embossed onto the side. In relevant part, it stated:

<pre>
                    DANGER
                   GASOLINE
              EXTREMELY FLAMMABLE
             VAPORS CAN EXPLODE
                    * * *
           NEVER USE GAS TO START A FIRE
                    * * *
            KEEP AWAY FROM HEAT SOURCES
     VAPORS CAN BE IGNITED BY A SPARK OR FLAME SOURCE MANY
        FEET AWAY * KEEP AWAY FROM FLAME . . . AND OTHER
                  SOURCES OF IGNITION
</pre>

Defs.' Mot. for Summ. J. Ex. B, Gas Can Warnings, ECF No. 76-4.

## DISCUSSION

Plaintiffs brought claims for negligent sale, negligent failure to warn, and breach of the implied warranty of merchantability.  Plaintiffs also assert that they are entitled to punitive damages.  Harbor Freight seeks summary judgment on all of Plaintiffs' claims.

I.   **Plaintiffs' Negligent Sale Claim**

"In Georgia, the essential elements of a cause of action for negligence are: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." *Vaughan v. Glymph*, 526 S.E.2d 357, 359 (Ga. Ct. App. 1999) (citing *Tuggle v. Helms*, 499 S.E.2d 365, 367 (Ga. Ct. App. 1998)).  Harbor Freight does not dispute that in Georgia a product seller may be liable under a negligence theory if it sold a product even though it had actual or constructive knowledge that the product was unreasonably dangerous at the time of the sale.  *See King Hardware Co. v. Ennis*, 147 S.E. 119, 121 (Ga. Ct. App. 1929) (noting that if a seller "purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not"); *cf. Hester v. Human*, 439 S.E.2d 50, 53 (Ga. Ct. App. 1993) (finding that the retailer of a dirt boring machine could not be liable under a negligence theory because it "was aware of no defects in the equipment, and had never heard of anyone being injured in the manner in which plaintiff's injury occurred"); *Ream Tool Co. v. Newton*, 433 S.E.2d 67, 70 (Ga. Ct. App. 1993) (finding that the seller of a wood cutter did not negligently sell a defective wood cutter because it had no knowledge of the cutter's "dangerous

quality" and nothing tending to call its attention to any dangers with the cutter).

In this case, Plaintiffs claim that the Blitz gas can was unreasonably dangerous because it lacked a flame arrestor. Plaintiffs further claim that Harbor Freight was negligent in selling Baldree the gas can despite knowing or having reason to know of its dangers. Harbor Freight argues that the present record establishes *as a matter of law* that it did not have actual or constructive knowledge of the dangers of the Blitz gas can. It does not.

Harbor Freight points out that the Blitz cans met industry standards. This fact is relevant to whether Harbor Freight was negligent, but it is not dispositive on this issue. Harbor Freight's main argument, though, is that it did not learn of a defect in Blitz gas cans or of any incidents associated with Blitz gas cans until December 2013, when Harbor Freight received an email from a salesman suggesting that Harbor Freight offer its customers safety gas cans in light of litigation against Wal-Mart regarding Blitz plastic gas cans. Plaintiffs argue that there is a genuine fact dispute on whether Harbor Freight knew by February 2012—well before Baldree purchased the gas can in September 2012—that there were significant problems with Blitz gas cans. It is undisputed that Harbor Freight managers knew by February 2012 that Blitz had declared bankruptcy. Pls.' Resp. to Defs.' Mot. for Summ. J.

Attach. 3, Email from J. Klein-Hageman to D. Hart, *et al.* (Feb. 16, 2012), ECF No. 110-3.  Harbor Freight managers also knew by February 2012 that one of its gas can vendors, Midwest Can Company, had increased prices for its gas cans; the managers speculated that it was because of the Blitz bankruptcy but asked their sales representative for a justification.  *Id.*  Shortly after that, on February 29, 2012, Midwest Can Company sent its customers, including Harbor Freight, a letter stating that "the past few years have been extremely challenging for manufacturers of portable fuel containers" and that "all fuel container manufacturers" had recently "become the victims of lawsuits which have proven to be extremely expensive to defend against."  Pls.' Resp. to Defs.' Mot. for Summ. J. Attach. 4, Letter from Midwest Can Co. to All Customers (Feb. 29, 2012), ECF No. 110-4.  The letter further stated:  "The country's largest portable fuel container manufacturer was forced to declare chapter 11 bankruptcy to provide some relief from the onslaught of lawsuits."  *Id.*  The letter went on to say that Midwest's risks had "grown exponentially and the costs of doing business in this marketplace have increased liability insurance costs dramatically," so Midwest invested in new equipment and technology to comply with new regulations—and those changes added cost to the manufacturing process, which resulted in price increases.  *Id.*

Based on this evidence, there is a jury question on whether Harbor Freight knew or had constructive knowledge that Blitz gas cans were unreasonably dangerous before September 2012. To be clear, the Court is not ruling that the letter itself put Harbor Freight on notice of defects in plastic Blitz gas containers. Rather, a jury could accept Plaintiffs' argument that minimal follow-up on the letter from Midwest, which depicted an industry reeling from the fall of its largest manufacturer and scrambling to respond by making changes to its products, would have revealed a number of flashback incidents that were substantially similar to the incident here.[2]  It is for the jury to decide whether there were substantially similar incidents that reasonably called Harbor Freight's attention to the dangerous quality of the gas container and whether Harbor Freight proceeded as a reasonable retailer under the circumstances.[3]  Harbor Freight's summary judgment motion on this ground is therefore denied. Harbor Freight did not seek summary judgment on Plaintiffs' negligent sale claim on any other grounds, so that claim remains pending for trial.

---

[2] Evidence of prior incidents "is only admissible if conditions substantially similar to the occurrence caused the prior accidents, and the prior incidents were not too remote in time." *Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 649–50 (11th Cir. 1990).

[3] Of course, if this evidence is not forthcoming at trial, then Harbor Freight may be entitled to judgment as a matter of law. But construing all reasonable inferences in favor of Plaintiff at this stage of the litigation, the Court finds a genuine factual dispute presently exists.

## II.  **Plaintiffs' Failure to Warn Claim**

To prove a negligent failure to warn claim against a product seller under Georgia law, a plaintiff must prove that the product seller was "aware of a danger either not communicated by the manufacturer's warning or substantively different from the dangers the manufacturer has included in a warning label" and that the failure to provide an adequate warning was the proximate cause of Plaintiffs' injuries.  *Farmer v. Brannan Auto Parts, Inc.*, 498 S.E.2d 583, 585-86 (Ga. Ct. App. 1998).  In *Beam v. Omark Industries, Inc.*, for example, a stud gun seller "separate[ed] the gun from the safety instructions and instruct[ed] the plaintiff in a manner contrary to the missing safety instructions," so there was a fact question on whether the seller was negligent.  237 S.E.2d 607, 610 (Ga. Ct. App. 1977).  Likewise, in *Bishop v. Farhat*, a jury question existed on whether a product distributor reasonably knew of the danger associated with its latex gloves such that it should not have labeled the gloves as "hypoallergenic."  489 S.E.2d 323, 328 (Ga. Ct. App. 1997).

But, a seller has "no duty to communicate to users a danger already clearly listed on the product itself."  *Farmer*, 498 S.E.2d at 585.  In *Farmer*, the manufacturer of a tire inflator product called Fix-a-Flat expressly warned that Fix-a-Flat was flammable, should not be used near heat or flame, and would remain flammable when transferred into a tire.  *Id.* at 584.  The plaintiff claimed

that he did not understand from the warning that the substance would remain flammable months after he placed it in his tire. He believed that the flammable properties of Fix-a-Flat would dissipate over time, and he argued that the auto parts store where he bought it should have warned him that it would not. *Id.* The Georgia Court of Appeals disagreed, concluding that the plaintiff "knew from reading the label that the substance could explode if exposed to heat or flame." *Id.* at 585. And, there was no evidence that the auto parts store knew of a situation like the plaintiff's or that it knew or should have known how long Fix-a-Flat remained flammable. *Id.*

*Farmer* is squarely on point here. Blitz warned, and Gomez knew, that gasoline is extremely flammable, that vapors can explode, and that gasoline should never be used to start a fire. Gomez knew from reading similar warnings on gas cans that he should not pour gasoline onto a fire because it is dangerous. Gomez nonetheless poured gasoline mixed with diesel onto a mostly extinguished fire. Plaintiffs' injury occurred because Gomez thought that he put enough diesel into the gasoline to diminish the dangerous properties of the gasoline, just like the plaintiff in *Farmer* thought that the Fix-a-Flat's flammable properties would dissipate over time. But Gomez was warned *never* to use gas to start a fire, that gasoline should be kept away from flames, and that gasoline vapors can be ignited by a spark. He erroneously

concluded that those warnings did not apply to his situation, and Plaintiffs were injured as a result.

Plaintiffs presented no evidence that they were injured because Harbor Freight was aware of but failed to warn about a danger that was not already provided by Blitz. The lack of the specific warnings Plaintiffs say should have been provided—that the gas can lacked a flame arrestor and that the gas can could explode—did not cause Plaintiffs' injuries because Gomez understood that he should not use the gas can to pour gasoline on a fire. The evidence, even viewed in the light most favorable to Plaintiffs, suggests that Gomez would have heeded the warning if the gas can contained straight gasoline. Instead, Plaintiffs were injured because Gomez believed he was not using gasoline even though he was. Plaintiffs do not argue that Harbor Freight knew about the risks of using a diesel/gasoline mixture near a fire or of the precise ratio at which a diesel/gasoline mixture is not flammable. Plaintiffs pointed to no evidence that Harbor Freight knew of a situation like Plaintiffs' where a person was injured using a diesel/gasoline mixture near a fire. In summary, there is no evidence that Harbor Freight knew about but failed to warn of the risk that caused Plaintiffs' injury: the risk of pouring a diesel/gasoline mixture onto a fire. For all of these reasons, the Court finds that Harbor Freight is entitled to summary judgment on Plaintiffs' negligent failure to warn claim.

## III. Gomez's Implied Warranty of Merchantability Claim[4]

Under Georgia law, a merchant impliedly warrants that goods "[a]re fit for the ordinary purposes for which such goods are used." O.C.G.A. § 11-2-314(2)(c).[5] In an action based on breach of the implied warranty of merchantability, a plaintiff must demonstrate "that the warranty was broken" because the product was not reasonably fit for the ordinary purposes for which it was sold and "that the breach of the warranty was the proximate cause of the loss sustained." O.C.G.A. § 11-2-314 UCC comment 13.

In this case, Plaintiffs argue that the Blitz gas can was not fit for the ordinary purpose for which gas cans are used: pouring gas. Plaintiffs argue that because the gas can was fitted with a spout for the purpose of pouring out gasoline, it was intended to be used for pouring fuel in all settings. But Plaintiffs pointed to no evidence that the gas can was designed or intended to be used to pour gasoline (or a diesel/gasoline mixture) *onto a fire*. Their argument ignores the fact that the gas can itself stated that it should be kept away from flames and other ignition sources because gasoline vapors can be ignited by a spark or flame source many feet away. Thus, the gas can warned that it was unfit to be

---

[4] Only Gomez's implied warranty of merchantability claim remains pending; the Court previously granted summary judgment on the warranty claims of Wille and Price.

[5] The Court assumes for purposes of summary judgment that Harbor Freight was a "merchant" of Blitz gas cans within the meaning of O.C.G.A. § 11-2-314.

used for starting a fire with gasoline.  No warranty can be implied that a gas can which warns that it should be kept away from flames is intended for safely pouring gasoline onto a fire.

Plaintiffs nonetheless suggest that Harbor Freight should be liable under an implied warranty of merchantability theory because it was reasonably foreseeable that someone might use a gas can to pour gasoline on or near a fire.  That is the point of the warning. The risk of a foreseeable misuse may give rise to a duty to warn against that misuse, but Plaintiffs did not point to any binding precedent establishing that a person who uses a product in a way that he is specifically warned not to may nonetheless maintain a claim for breach of the implied warranty of merchantability.  For these reasons, Gomez's warranty claim fails.

## IV.  Plaintiffs' Punitive Damages Claim

Plaintiffs did not respond to Harbor Freight's summary judgment motion on their punitive damages claim.  The Court deems that claim abandoned.  *See Adkins v. Christie*, 491 F. App'x 996, 998 (11th Cir. 2012) (per curiam) (citing *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (concluding that the district court did not err in dismissing one of plaintiff's claims when plaintiff did not respond to defendant's motion for summary judgment on that issue).

CONCLUSION

As discussed above, the Court denies Harbor Freight's summary judgment motion as to Plaintiffs' negligent sale claim but grants Harbor Freight's summary judgment motion as to Plaintiffs' negligent failure to warn, implied warranty of merchantability, and punitive damages claims.

IT IS SO ORDERED, this 18th day of April, 2019.

S/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA